MESCH CLARK ROTHSCHILD
259 North Meyer Avenue
Tucson, Arizona 85701
Phone: (520) 624-8886
Fax: (520) 798-1037
Email: fpetersen@mcrazlaw.com
irothschild@mcrazlaw.com
ecfbk@mcrazlaw.com
By: Frederick J. Petersen, # 19944
Isaac D. Rothschild, # 25726
22003-2/mbt

Attorneys for Debtors/Defendants

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re<br><br>DAVID K. CROWE and<br>COLLEEN M. CROWE,<br><br>Debtors. | Chapter 11<br><br>No. 4:19-bk-04406-BMW<br><br>**MOTION FOR PARTIAL SUMMARY JUDGMENT (COUNTS I – III)** |
| TURBINE POWERED TECHNOLOGY, LLC,<br><br>Plaintiff,<br>vs.<br><br>DAVID K. CROWE and COLLEEN M. CROWE,<br><br>Defendants. | Adv. No. 4:19-ap-00260-BMW |

David K. Crowe and Colleen M. Crowe ("Debtors" or "Plaintiffs"), move this Court for partial summary judgment on Counts I, II, and III of Turbine Powered Technology, LLC ("TPT")'s adversary Complaint (BK AP DE 1) under Rule 7056 of the Bankruptcy Rule and Rule 56 of the Federal Rules of Civil Procedure. Crowe also requests such ruling in relation to TPT's proof of claim filed in this case for approximately $30 million. At the root

of TPT's proof of claim and Counts I-III is a threshold issue: each of TPT's claims is based upon the "misappropriation and commercialization of TPT's Invention." (SOF 1). Therefore, before any of the three Counts may present a prima facia claim, TPT must prove it had a legally protected interest in its "Invention". But as a matter of law, TPT has never had any legally protectable proprietary or confidential information that was given or made available to Crowe. So, even if Crowe made use of TPT's Invention (which he did not), TPT has no legally protected interest in that technology that can give rise to the asserted claims. There is simply nothing for Crowe to have misappropriated.

TPT has never been able to provide a legally sufficient description nor any evidence proving the existence of a legally protectable trade secret. The law requires TPT to identify its trade secret with specificity and produce evidence of its existence. TPT has not met either burden in order to present a prima facia case. Because TPT cannot describe nor produce any evidence of a trade secret, TPT cannot succeed, as a matter of law, on any of its Nondischargeability Counts which rely on the same foundation.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **I.     FACTUAL AND PROCEDURAL BACKGROUND**

This proceeding arises out of a commercial relationship between non-party Tucson Embedded Systems, Inc. ("TES") and TPT and its predecessors in interest. At a certain point in the relationship, TES sold to Advanced Turbine Services ("ATS") which in turn sold to TPT a turbine engine control system called the Industrial Digital Engine Controller ("iDEC"). (SOF 2). The IDEC was a Fully Authorized Digital Electronic Control ("FADEC"). (SOF 3). At the time, debtor David Crowe was the chief executive officer of TES, as well as a software engineer who worked in the development of the iDEC. (SOF 4). Although there has been some dispute as to this issue, by TPT's own admission, TES developed the iDEC independently of TPT. (SOF 5). In 2013, TES sold several iDECs to ATS, which in turn sold the same to TPT. Those iDECs were installed into turbine powered hydraulic fracing units. (SOF 6).

Later, Green Field Energy Services, as the parent of TPT, sent purchase orders to TES to purchase additional iDEC units. All services were performed for Green Fields before the end of 2013. At all times, and in all interactions with TPT concerning such product sales, Crowe was an employee, officer, shareholder, and manager of TES. Crowe has not engaged in any project with, nor obtained any technological information, nor performed any services for TPT, since the conclusion of such project in 2013 when he was an officer and employee of TES.

By 2014, a lawsuit was commenced in the United States District Court for the District of Arizona by TES against TPT for TPT's failure to pay for iDECs sold and delivered pursuant to the purchase orders (the "District Court Litigation"). (SOF 7). Pertinently, in the course of that litigation, TPT alleged that TES misappropriated "the timing, temperatures, flow rates, horsepower settings, and pressures at which the T-53 optimally operated." (SOF 8). TPT claimed that TES improperly incorporated this data into the iDEC software. (SOF 9). In March of 2016, the District Court granted TES summary judgment against TPT's claim for misappropriation of trade secrets because TPT had been unable to identify its alleged trade secrets with any specificity. (SOF 10).

Meanwhile, in May of 2014, TES granted an exclusive license to Arizona Turbine Technology over TES's "Turbine Controls" which TES represented it owned, and that TES defined as the "iDec, CruzFrac, Generator Controls." (SOF 11). At that time, David Crowe was the CEO of TES, and marketed the iDEC through Arizona Turbine Technology in the course and scope of his employment by TES. (SOF 12). Crowe remained an owner and the CEO of TES until the parties entered into a Purchase Term Sheet dated July 15, 2016 at which time David Crowe gave up his interest in TES, in exchange for the principals of TES giving up their interest in Arizona Turbine Technology. (SOF 13).

In July of 2016, TPT filed a lawsuit in the Louisiana State Court against TES, Arizona Turbine Technology, LLC, Advanced Turbine Services, LLC, Ken Braccio, Daniel Foley, and debtor David Crowe. *Turbine Powered Technology, LLC v. Crowe, et al.*, No.

16-130379 (La. Dist. Ct. 2016) (the "Louisiana Litigation"). (SOF 14). This litigation raised substantially the same claims as the District Court Litigation, but also named David Crowe and Arizona Turbine Technology as defendants. (SOF 15). Even though previously denied on summary judgment, the linchpin of the Louisiana Litigation was an allegation that the Defendants "illegally appropriated the intellectual property derived from modifications to engine control software sold by TES and ATS to TPT under the Vendor Agreement." (SOF 16). TPT specified that "[t]he information at issue in [the Louisiana Litigation] is TPT's trade secrets in the design, manufacture, and controls for TPT's turbine-powered hydraulic-fracturing pumping equipment." (SOF 17). The Louisiana Court of Appeals eventually ruled that as of June 15, 2017, TPT had failed again to describe its trade secrets with any specificity. (SOF 18).

On or about October 7, 2016, TES and TPT entered a confidential Settlement Agreement and Release. (SOF 19). As part of the settlement, TPT acknowledged that the hardware and software platform for the iDEC was owned exclusively by TES. (SOF 20). Further, TPT and TES agreed that they jointly owned the "patented technology" (U.S. Patent No. 9,429,078), 51% and 49%, respectively. (SOF 21). TES further represented (other than the License Agreement to Arizona Turbine) "that it has not assigned or transferred any of its or TPT's technology which forms the subject matter of US Patent No. 9,429,078." (SOF 22). Even though TPT had filed at least two lawsuits by the Effective Date of such settlement claiming a misappropriate of "trade secrets", the Agreement required TES to "within thirty days provide TPT with a digital file containing the TPT's set points and tuning data." (SOF 23). The Agreement, however, also included a Mutual Release of all claims, including against their respective affiliates, officers, directors, shareholders, interest holders, members, partners, managers, representatives, assigns, employees, and direct and indirect subsidiary companies. (SOF 24).

In February of 2017, litigation began between TPT and its lawyers in the District Court Litigation, the Udall Law Firm. *Udall Law Firm, LLP v. Turbine Powered*

*Technology, LLC*, No. C20170786 (Ariz. Super. Ct. Feb. 17, 2017) (the Superior Court Litigation). (SOF 25). By the time the case went to trial, TPT had asserted claims against Udall for legal malpractice, specifically alleging that Udall had committed such malpractice by failing to compel production of certain source code in order to procure evidence of their trade secret. (SOF 26). Importantly, TPT alleged that, had Udall pursued discovery more aggressively, "TPT would have discovered evidence of TPT's misappropriated trade secrets." (SOF 27). In September 2019, after TPT presented all of its evidence at trial, Udall moved for a directed verdict, arguing that TPT had still not described nor produced evidence about what information constituted a trade secret, and argued that the trade secret evidence in the Superior Court Litigation was identical to the deficient information in the District Court Litigation. (SOF 28). The superior court granted this motion for directed verdict, finding that TPT had failed to sufficiently describe or present evidence of its trade secret. (SOF 29).

Now, in this bankruptcy, TPT has filed a proof of claim for approximately $30 million and has begun an adversary proceeding to prove it holds a nondischargeable claim against the Crowes. (SOF 30). Both its proof of claim and the Nondischargeability Counts are grounded entirely in the alleged misappropriation of TPT's alleged "trade secret".

## II. LEGAL STANDARD

### A. A Party Is Entitled To Summary Judgment Where The Non-Moving Party Fails To Present Any Evidence Of An Essential Element Of Their Claim

Summary judgment is proper if Crowe is entitled to judgment as a matter of law and there are no genuine issues of material fact. Fed. R. Civ. P. 56. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, [and evidence], if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal citations omitted). "However, if the non-moving party bears the burden of proof at trial, the moving party's summary judgment motion need

Case 4:19-ap-00260-BMW   Doc 18   Filed 11/13/19   Entered 11/13/19 17:12:11   Desc
Main Document   Page 5 of 16

5

only highlight the absence of evidence supporting the non-moving party's claims." *Firetrace USA, LLC v. Jesclard*, 800 F. Supp. 2d 1042, 1046 (D. Ariz. 2010); *see also Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). "The burden then shifts to the non-moving party who must produce evidence sustaining a genuine issue of disputed material fact." *Firetrace*, 800 F. Supp. 2d at 1046.

TPT has the burden to prove the existence of a legally protectable trade secret, and therefore has the burden of demonstrating a genuine issue of material fact. *Engineered Mechanical Services, Inc. v. Langlois*, 464 S.2d 329, 333 (La. Ct. App.); *W.L. Gore & Associates, Inc. v. GI Dynamics, Inc.*, 872 F. Supp. 2d 883, 899 (D. Ariz. 2012). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B. TPT's Nondischargeability Counts Require TPT To Show It Had A Trade Secret That Was Subject To Legal Protection

TPT asserts claims for:

1. 11 U.S.C. §523(a)(6)—a willful and malicious injury for knowingly misappropriating and commercializing TPT's Invention or stealing TPT's Invention (SOF 31).

2. 11 U.S.C. §523(a)(4)—an embezzlement or larceny for "misappropriating TPT's technology arising from and relating to TPT's Invention" (SOF 31), and

3. 11 U.S.C. §523(a)(2)—a debt for money or property that was obtained by intentional fraud for false representations to ENTI and Eco-Stim that Crowe and/or is companies were the "owner of TPT's technology." (SOF 31).

To sustain a claim for a willful and malicious injury under § 523(a)(6), TPT must prove both a willful and a malicious act causing injury to prevail.

To sustain a claim for embezzlement under 11 U.S.C. § 523(a)(4), TPT has to burden to establish three elements: "(1) property rightfully in the possession of a nonowner; (2) a

nonowner's appropriation of the property to a use other than which [it] was entrusted; and (3) circumstances indicating fraud." *In re Littleton*, 942 F.2d 551, 555 (9th Cir. 1991).

To sustain a claim of nondischargeability under 11 U.S.C. § 523(a)(2), TPT must show that a debt for money or property was obtained by false pretenses, a false representation, or actual fraud. In order to survive summary judgment, TPT must be able to create a genuine issue of material fact that "(1) the debtor made the representation; (2) the debtor knew the representation was false at the time made; (3) the debtor made the representation with the intention and purpose of deceiving the creditor; (4) the creditor relied on the representation; and (5) the creditor sustained damages as a proximate result." *McCrary v. Barrack (In re Barrack)*, 217 B.R. 598, 604 (9th Cir. BAP 1998).

All three of these claims depend on the existence of wrongfully appropriated property. And for all three claims, TPT has the burden of proving the requisite elements of such claims. TPT claims that its wrongfully appropriated property was certain trade secrets although sometimes called the TPT Invention or the TPT technology. (SOF 32). Thus, for TPT to maintain any of its claims for nondischargeability, TPT must provide a detailed description and provide sufficient evidence to demonstrate that it had a legally protected trade secret.

### C. The Uniform Trade Secrets Act Requires TPT To Prove A "Legally Protectable" Trade Secret

"The threshold inquiry in every trade secrecy case is whether a legally protectable trade secret exists in fact." *Engineered Mechanical Services, Inc. v. Langlois*, 464 S.2d 329, 333 (La. Ct. App.).[1] In such cases, "the plaintiff has the burden of establishing both the

---

[1] It is unclear whether this Court should apply state law for the purposes of determining nondischargeability in this context. It is well established law that this court should apply federal law for the purposes of the § 523 factors raised in the Nondischargeability Counts. *In re Ormsby*, 591 F.3d at 1205. As to the existence of a trade secret, however, there is an open question whether the alleged property right that is the subject of an alleged misappropriation is defined by state law. This distinction may be largely academic, however, where Louisiana, Arizona, and the United States Congress have substantially adopted the Uniform Trade Secrets Act. Under the Uniform Act, cases interpreting other Uniform Trade Secrets Acts are persuasive. *See* La. R.S. 51:1438; *Engineered Mechanical Services, Inc. v. Langlois*, 464 S0.2d 329, 333 (La. Ct. App.) (applying trade secrets reasoning from United States District Court for the District of Arizona).

existence of a legally protectable secret and a legal basis upon which to predicate relief." *Id*. Trade secret protection should not be afforded to a plaintiff when there is "no evidence that [plaintiff] ever communicated to any of the applicable defendants what it considered as trade secrets." *Id*. "When a party fails to identify its trade secrets with particularity, summary judgment is appropriate." *W.L. Gore & Associates, Inc. v. GI Dynamics, Inc.*, 872 F. Supp. 2d 883, 899 (D. Ariz. 2012); *see also Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1166 (9th Cir. 1998); *SL Montevideo Tech., Inc. v. Eaton Aero., LLC*, 491 F.3d 350, 354 (8th Cir. 2007) ("In a trade secret case, '[s]imply to assert a trade secret resides in some combination of otherwise known data is not sufficient, as the combination itself must be delineated with some particularity in establishing its trade secret status'"), *quoting Jostens, Inc. v. Nat'l Computer Sys.*, 318 N.W.2d 691, 699 (Minn. 1982); *Big Vision Private, Ltd. v. E.I. Dupont De Nemours & Co.*, 1 F. Supp. 3d 224, 258 (S.D.N.Y. 2014) ("While the Second Circuit has not explicitly adopted this requirement, each Circuit Court of Appeals to have opined on this issue has required a comparable degree of specificity, as have numerous district courts across the country") (collecting cases).

Summary judgment is warranted when the party proposing a trade secret does not provide "concrete identification" of the specifics of the trade secret, but instead relies on "catchall phrase[s]." *Imax Corp.*, 152 F.3d at 1167.

A series of catchall phrases is precisely the description provided to date by TPT of its "trade secret", the "TPT Invention", and of "TPT's technology". Despite many declarations

---

"Under the Louisiana Uniform Trade Secrets Act, LSA-R.S. 51:1431 et seq., the term 'trade secret' means information, including a formula, pattern, compilation, device, method, technique or process that derives independent economic value, actual or potential, from not being generally known or readily ascertainable by proper means by others who could obtain economic value from its disclosure and is subject to reasonable efforts to maintain secrecy." *Fox v. Fox*, 164 So.3d 359, 364 (La. Ct. App. 2015), *accord* A.R.S. § 44-401(4); LA R.S. § 51:1431; 18 U.S.C. § 1839.

Further, it is unclear whether Louisiana law should apply at all in this case, where the events in question occurred substantially in Arizona and where the dispute between TES and TPT on the exact same nucleus of facts was litigated under Arizona law. (USDC DE 129 p. 17).

and numerous pleadings filed, neither the Defendants, nor this Court can say with precision what the alleged "trade secret" is. Unless TPT describes the same with particularity, and presents evidence that it held a protectable interest in the same, summary judgment is appropriate.

## III. ARGUMENT

### A. TPT Cannot Describe Nor Put Forth Legally Sufficient Evidence Of A Trade Secret

In order to survive summary judgment, TPT must describe its trade secret with particularity and present evidence of all the elements to prove the existence of a legally protectable trade secret. *Myers v. City of Hermosa Beach*, No. CV-06-716-MMM, 2007 WK 9757809, *77 (C.D. Cal. June 8, 2007) ("under Rule 56, a defendant is not required to prove a negative . . . [The defendant] may simply assert that there is no evidence to substantiate the material allegations of the complaint . . . plaintiffs must adduce evidence contradicting defendant's claim"); *W.L. Gore & Associates, Inc.*, 872 F. Supp. 2d at 899 (summary judgment proper in trade secrets case unless trade secret identified with particularity). If TPT cannot provide a sufficient description and produce sufficient evidence, this Court should grant summary judgment to the Crowes on all three of TPT's Nondischargeability Counts.

TPT has yet, in multiple court proceedings, to describe with particularity and evidence its "trade secret", because TPT fundamentally has no trade secret. Even though TPT last communicated with Crowe regarding hydraulic fracing in 2013, and thus must the same was provided to Crowe during such time, TPT has not ever been able to describe what it alleges to be its trade secret.

TPT has avowed to this Court on multiple occasions that TPT is ready for trial in Louisiana. (SOF 33). At a minimum, TPT must therefore now be required to describe its trade secret with particularity and present its evidence. TPT should not be allowed to "go

fishing" for proof, nor take discovery to prove it has a prima facia claim. TPT has failed on three prior occasions to produce evidence of a trade secret after significant discovery.

First, the United States District Court for the District of Arizona granted summary judgment against TPT for "fail[ing] to provide enough detail about the alleged trade secrets for TES or this Court to adequately discern what might be legally protectable." (SOF 34).

In that case TPT identified its trade secrets as:

> a compilation consisting of the parameters and settings, including timing, temperatures, flow rates, horsepower settings, pressures, warning protocols, and shutdown protocols, necessary to make a T-53 engine run on field gas drive a one megawatt (1 mw) generator in oil and gas industry applications in remote locations where personnel cannot be constantly on sight monitoring it to prevent catastrophic failures. (SOF 35).

And additionally as:

> Retrofitting the original fuel system; modifying operational and control parameters including the use of BASLER equipment; modifying manifold and nozzle designs; and modifying starting, warning, and shutdown protocols as necessary changes to the T-53 for its purposes and that this information is [TPT]'s protectable trade secret. (SOF 35).

TPT also provided source code and the report of an expert, Mr. Scott Greene, but such efforts proved insufficient as a matter of law. (SOF 36). As a result, unless a more detailed description is provided, this Court should grant summary judgment for the Defendants.[2] *Lopez v. Emergency Serv. Restoration, Inc., (In re Lopez)*, 367 B.R. 99, 104 (9th Cir. B.A.P. 2007).

Second, on September 5, 2019, the Louisiana Court of Appeal reversed a judgment dismissing a motion to dissolve a preliminary injunction, finding "that while TPT makes

---

[2] "Issue preclusion bars relitigation of issues that have been actually litigated." *Lopez v. Emergency Serv. Restoration, Inc., (In re Lopez)*, 367 B.R. 99, 104 (9th Cir. B.A.P. 2007). Issue preclusions bars relitigation of an issue that "(1) is identical to a fact or issue determined in an earlier proceeding, (2) was actually decided by a court in an earlier action, (3) the issue was necessary to the judgment in such action, (4) there was a final judgment on the merits, and (5) the parties are the same." *Id*. The sufficiency of TPT's earlier disclosure of its trade secret is identical to the threshold issues here, was actually decided by the district court, was necessary to that judgment, was followed by a final judgment on the merits, and TPT is the same "party against whom preclusion is sought." *Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1245 (9th Cir. 2001).

broad assertions in its petition regarding its alleged trade secrets, TPT failed to present any testimony or other evidence clarifying these broad assertions." (SOF 37). The Louisiana Court of Appeal noted that the principal of TPT, Ted McIntyre "was unable to give a consistent answer regarding the source of his trade secret claims, providing multiple, differing answers as to what specifically constitutes the alleged trade secrets of TPT." (SOF 38). The Court of Appeal also noted that the Louisiana trial court "acknowledged that it was still unsure as to what intellectual property was at issue." (SOF 39). Again, TPT has failed to produce evidence sufficient to convince a court that it has a legally protectable trade secret.

In the Louisiana State Court Case, TPT described the TPT trade secrets as: the "design, manufacture, and controls for TPT's turbine-powered hydraulic-fracturing pumping equipment . . . includ[ing] but . . . not limited to formulas, patterns, compilations, programs, methods, techniques and process invented and developed by TPT to control turbine engines used in the hydraulic fracturing business stimulation of oil and gas wells." (SOF 40).

In seeking an injunction in the Louisiana Litigation, TPT asked the court to enjoin Crowe from using, selling, transferring, or disclosing any of the information, goods or services

> "which contain or are based on the TF40 and/or T-55 turbine engine digital controls . . . including: industrial turbine engine control systems . . ., iDEC, industrial engine controls, "Controller-Turbine Fracking Solution", FADEC, industrial platform controllers for turbine-powered pumping equipment, "iTxc line of controls" including iTpc (Industrial Turbine Pump Controller), any and all controls purportedly licensed by Turbine Integrated Power Systems, digital engine controls which use an electronic fuel valve, any related digital industrialized controls, and any mechanical or analytical work associated with the above referenced controls, engine models or derivatives, or other engineering/customer support activity related therein" (SOF 41).

At the hearing on the motion to dissolve the preliminary injunction, Ted McIntyre testified that "the intellectual property that [Crowe] misappropriated that forms the basis of

[the Louisiana Litigation was] controlling a turbine engine for hydraulic fracturing power generation." (SOF 42). He also testified that his intellectual property was "turbine driven hydraulic fracturing and turbine driven power generation, in particular as it relates to T53, T55, and TF40 engines." (SOF 43).

When pressed at the dissolution hearing, McIntyre explained he was not bringing suit for patent, copyright, or trademark. (SOF 44). A review of his complaint confirms that no such claims were being raised by TPT, but rather solely a trade secret claim forms the predicate for all claims asserted in the Louisiana action. When asked to define that trade secret McIntyre believed TPT possessed, McIntyre explained the TPT trade secret included "digital entry control systems and/or packages for turbine powered hydraulic fracturing equipment," (SOF 45) "assembling, shipping, distributing and selling any further digital engine control packages related to and services related to Team Vesco racing," (SOF 45), "controlling a turbine engine for hydraulic fracturing [including] the speed of the output of the turbine" (SOF 45), as well as the "dry shaft speed," "managing the system as it applies to constant rate, which is termed cruise control," and finally that TPT had a trade secret in "everything that [Crowe] does relating to hydraulic fracturing in industrial turbine applications using software and the IP embedded in." (SOF 45). McIntyre further explained that TPT had patents which "address controlling multiple engines and pumps . . . and the Cruzfrac controls that rate by excelling and decelling the engine via continental control valve and/or similar valve that would normally be used in an IDEC, which is just basically an industrial controller." (SOF 46). McIntyre attempted a description of TPT's intellectual property and trade secrets, but only specified that "[TPT] put all the IP in as it relates to set points, control, shut-down, bleed-band, closure, opening, bleed valve on the 40's." (SOF 47). The Louisiana Court of Appeals did not find this description specific enough to define the trade secret. (SOF 48).

Third, on September 12, 2019, the Arizona Superior Court in Pima County granted a directed verdict to TPT's former counsel in a malpractice suit related to TPT's

representation in the District Court litigation. (SOF 49). In granting a directed verdict against TPT, the superior court noted "the absence from the evidence of any mention with any specificity of the source codes associated with operated the so called IDECs" and further noted that "the evidence before this Court is similarly general or generic as that before" the District Court. (SOF 50). After expressing concern about "the lack of specificity presented by [TPT]," the superior court noted that TPT's own expert was unable to detail the specifics of the trade secret, and ultimately the superior court concluded that an adequate description of the trade secret was not available for the jury to ascertan the nature of what TPT was trying to protect. (SOF 51).

Finally, in this nondischargeability adversary proceeding, TPT appears to define its invention as "turbine powered equipment for hydraulic fracturing and power generation." (SOF 52). TPT further appears to define its trade secret as "all information gained from TPT's extensive testing," which they appear to allege includes "digital engine control modifications, source code, object code, control values for industrial and new fuel capabilities, and software upgrades developed be and for TPT." (SOF 53). Finally, in a declaration, McIntyre appears to suggest certain "confidential test data, set points for the engine controls, and proprietary industrial turbine data developed by TPT" are part of TPT's trade secrets. (SOF 54). McIntyre also claims that the IDEC was owned by TPT. And that the IDEC somehow constitutes a trade secret. (SOF 55).

Until the claimed "trade secret" is defined, TPT has no claim as a matter of law. To the extent that TPT simply repeats one or multiple of the descriptions previously attempted and ruled insufficient, this Court refuse to accept such description as sufficient. *In re Lopez*, 367 B.R. at 104.

### B. TPT Cannot Describe Nor Produce Evidence Of A Protectable Trade Secret

The reason TPT has not produced a description or evidence of its trade secret is because it simply does not have one. As part of the settlement agreement between TES and

TPT, TES was obligated to "provide TPT with a digital file containing TPT's set points and tuning data" (SOF 56) —the very information TPT claims generally to be its "trade secret". It is notable that TPT litigated with various parties for two years before this agreement was reached, which was almost three years after the last interaction between TPT and Crowe.

In that same settlement, TPT and TES agreed that TES owned the iDEC, which was developed independently by TES. (SOF 57). By definition, TPT does not have a trade secret in the iDEC.

The only intellectual property specifically referenced in the settlement agreement is "the Patent and patented technology . . . U.S. Patent No. 9,429,078 ("Patent"), and the inventions claimed therein, including all improvements and modifications thereof, and all rights and privileges under said Patent." (SOF 58). The agreement notes TES has not assigned or transferred the combination of TES and "TPT's technology which forms the subject matter of US Patent No. 9,429,078 to Arizona Turbine Technology, Kenneth Braccio, David Crowe, or any other affiliated person or entity." (SOF 59).

Because a patent requires public disclosure of technology, to the extent that any part of TPT's claimed "Invention" is disclosed in the patent, TPT cannot assert it has a trade secret in that information. *United States v. Liew*, 856 F.3d 585, 598 (9th Cir. 2017); *Tewari De-Ox Systems, Inc. v. Mountain States/Rosen, L.L.C.*, 637 F.3d 604, 611-612 (5th Cir. 2011); *Group One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041, 1050-51 (Fed. Cir. 2001).

### C. TPT Cannot Meet the Other Elements of a Trade Secrets Claim

Even if TPT is able to establish a legally protectable trade secret, TPT will still fail to prove a claim for misappropriation of trade secrets. In order to establish a valid claim, once TPT has identified a purported trade secret, TPT must also show that the information is not publicly available and that TPT took reasonable steps to keep its information secret. A.R.S. § 44-401(4); LA R.S. § 51:1431; 18 U.S.C. § 1839; *see also Enter Leasing Co. of Phx. v. Ehmke*, 197 Ariz. 144 ¶ 15 (App. 1999) ("Matters that are public knowledge are not safeguarded as trade secrets"); Id. ("the most important factor in gaining trade secret

protection is demonstrating that the owner has taken such precautions as are reasonable under the circumstances to preserve the secrecy of the information").

Then, even if TPT can show it has a legally protectable trade secret, TPT must show that Crowe (not Arizona Turbine Technology) misappropriated that secret, which involves more than simply using the trade secret, and instead requires acquiring the trade secret through "improper means," which includes "theft bribery, misrepresentation, breach or inducement of a breach of duty to maintain secrecy." A.R.S. § 44-401(2), (1).

But Crowe is not able to assess these elements due to TPT's preliminary failure to identify its trade secret with specificity. Without understanding exactly what information TPT is claiming David Crowe misappropriated, Crowe cannot rally evidence to rebut TPT's allegations that such trade secrets were acquired through improper means.

## IV. CONCLUSION

Ultimately, TPT has had four chances to state with specificity exactly what trade secret it alleges that Crowe misappropriated. TPT has failed in three prior cases, and fails again in this case. Until TPT can describe its alleged trade secret with particularity and provide evidence of the elements to prove a legally protectable trade secret, the Crowes are entitled to summary judgment denying the Nondischargeability Counts in the adversary proceeding.

DATED: November 13, 2019            MESCH CLARK ROTHSCHILD

                                    By   s/ Frederick J. Petersen, # 19944
                                        Frederick J. Petersen
                                        Isaac D. Rothschild
                                        Attorneys for Debtors/Defendants

Notice of Electronic Filing ("NEF") electronically served on the date of filing upon the registered CM/ECF Users herein as evidenced by the NEF.

COPIES served as indicated below on November 14, 2019:

| | |
|---|---|
| Synchrony Bank<br>c/o PRA Receivables Management, LLC<br>PO Box 41021<br>Norfolk, VA 23541<br>Email: claims@recoverycorp.com | Turbine Powered Technology, LLC<br>c/o Its Managing Member, Ted McIntye, II<br>298 Louisiana Road, Port of West St. Mary<br>Franklin, LA 70538<br>Email: legal@marineturbine.com<br>Email: ted@marineturbine.com<br>Member, Committee of Unsecured Creditors |
| Tucson Embedded Systems<br>Attn: Dennis Kenman<br>5620 N. Kolb Rd., Ste 160<br>Tucsons, AZ 85750<br>Email: contracts@tucsonembedded.com<br>Member, Committee of Unsecured Creditors | Lindsay Brew<br>Miller, Pitt, Feldman & McAnally<br>One S. Church Ave., Ste 900<br>Tucson, AZ 85701<br>Email: lbrew@mpfmlaw.com<br>Member, Committee of Unsecured Creditors |
| Quicken Loans, Inc.<br>c/o Aldridge Pite, LLP<br>PO Box 17933<br>San Diego, CA 92177-0933<br>Email: ecfazb@aldridgepite.com | USAA Federal Savings Bank<br>c/o Aaron M. Waite<br>Weinstein & Riley, P.S.<br>6785-4 S. Eastern Avenue<br>Las Vegas, NV 89119<br>Email: aaronw@w-legal.com |
| Bradley J. Stevens and Fay W. Bidlack<br>Jennings, Strouss & Salmon, PLC<br>One E. Washington Street, Ste 1900<br>Phoenix, AZ 85004-2554<br>Email: bstevens@jsslaw.com<br>Email: fbidlack@jsslaw.com<br>Attorneys for the Official Committee of Unsecured Creditors | |

26P8024